IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:24-CV-00491-KDB-DCK

| | |
|---|---|
| CHARLES MELVIN, <br><br> Plaintiff, <br><br> v. <br><br> CENTRAL PIEDMONT COMMUNITY COLLEGE, <br><br> Defendant. | ORDER |

**THIS MATTER** is before the Court on Defendant Central Piedmont Community College's ("CPCC") Motion for Summary Judgment (Doc. No. 22). The Court has carefully considered this motion, the parties' briefs and exhibits and oral argument on the motion from the parties' counsel on July 17, 2025. For the reasons discussed below, the Court will **GRANT** the motion.

### I.     LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *United States v. 8.929 Acres of Land in Arlington Cnty., Virginia*, 36 F.4th 240, 252 (4th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)); *see United States, f/u/b Modern Mosaic, LTD v. Turner Construction Co., et al.*, 946 F.3d 201, 206 (4th Cir. 2019). A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *8.929 Acres of Land,* 36 F.4th at 252. "A fact is material if it might

affect the outcome of the suit under the governing law." *Id*. (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions, or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (when the nonmoving party "has failed to make a sufficient showing on an essential element of [his] claim with respect to which [he] has the burden of proof," summary judgment is warranted); *United States ex rel. Gugenheim v. Meridian Senior Living, LLC*, 36 F.4th 173, 178 (4th Cir. 2022). If the movant satisfies his initial burden to demonstrate "an absence of evidence to support the nonmoving party's case," the burden shifts to the nonmovant to "present specific facts showing that there is a genuine issue for trial." *8.929 Acres of Land,* 36 F.4th at 252 (quoting *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015)). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Hixson v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021) (quoting Anderson, 477 U.S. at 247–48). Rather, the nonmoving party must establish that a material fact is genuinely disputed by, *inter alia*, "citing to particular parts of the materials of record" and cannot rely only on "conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *8.929 Acres of Land,* 36 F.4th at 252 (quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013)); *see also* Fed. R. Civ. P. 56(c)(1)(A).

Still, summary judgment is not intended to be a substitute for a trial of the facts. *Anderson*, 477 U.S. at 249. In determining if summary judgment is appropriate, "courts must view the evidence in the light most favorable to the nonmoving party and refrain from weigh[ing] the

evidence or mak[ing] credibility determinations." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (quoting *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017)) (internal quotation marks omitted). "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015) (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)). In the end, the relevant inquiry on summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## II.  FACTS AND PROCEDURAL HISTORY

Charles Melvin, an African American male, was enrolled as a cadet in CPCC's Basic Law Enforcement Training Program ("the Program") for the Fall 2020 and Spring 2021 semesters. Doc. No. 11 at 1, 3. The Program provides college credit and certification for students interested in becoming law enforcement officers in North Carolina. *Id.* at 1.

During the Spring 2021 semester, a female cadet filed a complaint against Melvin, alleging that he made comments and engaged in conduct that she perceived to be sexual in nature, and which made her feel uncomfortable. Doc. No. 22-4 at 1. On March 3, 2021, after Program supervisor Sergeant Moore notified Melvin of the complaint, Melvin reported that he was subjected to racial, sexual, and homophobic commentary from his peer cadets, although no steps were taken to address his concerns. *Id.* at 4. On March 22, 2021, he received a letter from CPCC notifying him of the school rules he was alleged to have violated and that a hearing on the matter would take place on March 26. Doc. No. 25-3 at 4; Doc. No. 22-5 at 1. The letter also referred Melvin to the Student Code of Conduct for more information and provided him a web link to

3

access it. Doc. No. 22-5 at 1. Melvin attended the hearing, where he learned the name of his accuser and what he was accused of. Def's. Ex. 4. Melvin denied the allegations and defended himself to CPCC Dean Terry Moore. *Id.* Ten days later, on April 5, 2021, he received a letter from the school which stated that he was responsible for indecent and harassing conduct, and that his punishment would be suspension from CPCC for a two-year period. Do. No. 22-7 at 1. The letter included the same link as in the hearing notice letter, again directing Melvin to go to CPCC's Student Code of Conduct website "[f]or additional information." *Id.* Melvin alleges that the letter failed to provide notice of his right to appeal the suspension. Doc. No. 11 at 7. Melvin further claims that CPCC acted swiftly on complaints against him (because of his gender) while ignoring his own reports of discrimination and harassment. Doc. No. 25 at 1.

Nearly three years later, on April 4, 2024, Melvin filed this action in Mecklenburg County Superior Court, asserting violations of procedural due process under the Fourteenth Amendment and gender discrimination under Title IX. CPCC timely removed the matter to federal court. After Melvin amended his complaint (*see* Doc. No. 11), CPCC filed the pending motion for summary judgment, asserting that it did not violate Melvin's right to due process under the Fourteenth Amendment, that Melvin cannot show that CPCC discriminated against him because of his gender, and that in any case, Melvin's claim is time-barred. *See* Doc. No. 22. The Motion has been fully briefed and argued, and is now ripe for the Court's ruling.

### III. DISCUSSION

Melvin asserts that his procedural due process rights were violated during the disciplinary process, citing a lack of clear and specific information regarding the appeals process. He further claims that CPCC applied its Code of Conduct in a discriminatory manner, enforcing it against him, but not against female students involved in similar circumstances. Doc. No. 11 at 7, 9.

4

### A. Due Process Violation

Melvin first alleges that CPCC violated his procedural due process rights under the Fourteenth Amendment because it "failed" to inform him of his "right" to appeal his suspension. Doc. No. 11 at 7. As an initial matter, it is unclear whether college students possess a "constitutionally protectible property right" in their continued enrollment in a university. *Sheppard v. Visitors of Virginia State Univ.*, 993 F.3d 230, 239 (4th Cir. 2021) (quoting *Tigrett v. Rector & Visitors of Univ. of Va.*, 290 F.3d 620, 627 (4th Cir. 2002). *See also Regents of the Univ. of Mich. v. Ewing,* 474 U.S. 214, 223 (1985). But, even assuming (without deciding) that such a right exists, Melvin attempts to expand the well-established requirements for procedural due process—notice and the opportunity to be heard—to include explicit notice of a right to appeal.

CPCC included a web link to its Student Code of Conduct (which detailed how to appeal a disciplinary decision), in both the March 22, 2021, hearing notice letter and the April 5, 2021, letter notifying Melvin of the outcome of the hearing. However, Melvin contends that provision of the web link was insufficient notice of his right to appeal, although he has not pointed to any case law suggesting that a notice of the right to appeal (in any format) is necessary to meet procedural due process requirements.

The Fourth Circuit explains that "constitutionally sufficient procedures under procedural due process only requires notice of a hearing and an opportunity to be heard." *Snider Int'l Corp. v. Town of Forest Heights, Md.*, 739 F.3d 140, 146 (4th Cir. 2014). S*ee also Butler v. Rector & Bd. of Visitors of Coll. of William & Mary*, 121 F. App'x 515, 519 n.2, 520 (4th Cir. 2005) (explaining that the college had met its due process requirements when, in a disciplinary hearing, the student received notice and the opportunity to be heard); *Doe v. Virginia Polytechnic Inst. & State Univ.*, 400 F. Supp. 3d 479, 500 (W.D. Va. 2019) (noting that in a disciplinary setting

involving alleged sexual misconduct, "notice should contain a statement of the specific charges and grounds which, if proven, would justify expulsion under the regulations of the [University]."); *Doe v. The Citadel*, No. 2:21-cv-04198-DCN, 2022 WL 2806473, at *8 (D.S.C. July 18, 2022), *aff'd sub nom*. *Doe v. The Citadel*, No. 22-1843, 2023 WL 3944370 (4th Cir. June 12, 2023) (emphasizing that the student must be notified before the hearing of the charges against him).

Because the parties agree that Melvin received notice and the opportunity to be heard (and indeed, he attended the hearing and defended himself vigorously), *see* Doc. Nos. 25 at 3; 22-1 at 2–4, his procedural due process rights were not violated. And, even if a notice of appeal was a constitutional requirement of due process (it is not), his claim would still fail, because CPCC *included* a web link to the Student Code of Conduct, which details the appeals process, in *both* the notification and suspension letters, which Melvin admits to receiving. *See, e.g., Kowalski v. Berkeley Cnty. Sch.,* 652 F.3d 565, 575 (4th Cir. 2011) (where the Fourth Circuit determined that because plaintiff acknowledged receiving copies of the Student Handbook and Student Code of Conduct, she was put on adequate notice of the type of behavior that could be punished by school authorities). Accordingly, Melvin's procedural due process claim fails.

### B. Title IX Gender Discrimination

In Melvin's second claim, he alleges that CPCC swiftly investigated and imposed severe sanctions against him based on complaints from a female student, but when he made "similar" complaints against other students (some of whom were female), the school failed to investigate. Doc. No. 25 at 6. Put simply, Melvin believes that the school selectively enforced its Code of Conduct against him because of his gender.

"To state a selective enforcement claim, a plaintiff must plausibly allege that regardless of his guilt or innocence, his gender was a but-for cause of the severity of the sanctions or of the

decision to initiate the challenged disciplinary proceeding in the first place." *Kashdan v. George Mason Univ.*, 70 F.4th 694, 701 (4th Cir. 2023); *see Sheppard*, 993 F.3d at 236–237 (emphasizing that the critical factor in a Title IX claim is that plaintiff adequately pled a causal link between the student's sex and the university's challenged disciplinary proceedings). A plaintiff, like Melvin, can do this by showing that a similarly situated person of the opposite sex was treated more favorably. *See Sheppard*, 993 F.3d at 235 n.6, 237.

The only female comparator Melvin clearly identifies in support of his selective enforcement claim is his accuser. Courts have held that when a plaintiff "seeks to use their accuser as a comparator, the two can be compared to show selective enforcement only if they both initiate or attempt to initiate a complaint against each other." *Doe v. Fairfax Cnty. Sch. Bd.*, 403 F. Supp. 3d 508 (E.D. Va. 2019) (quoting *Doe 2 by & through Doe 1 v. Fairfax Cnty. Sch. Bd.*, 384 F. Supp. 3d 598, 609 n.6 (E.D. Va. 2019), *aff'd*, 832 F. App'x 802 (4th Cir. 2020). *See also Rossley v. Drake Univ.*, 342 F. Supp. 3d 904 (S.D. Iowa 2018), *aff'd*, 979 F.3d 1184 (8th Cir. 2020) (holding that when an accused student does not make a complaint against their accuser, the two cannot be compared). While Melvin broadly alleges that other students, including a female, made what he considered to be sexually charged comments, he does not allege that his accuser made any of them. Therefore, his accuser fails as a comparator.

But even if his accuser had made the comments, she would still fail as a comparator because the circumstances and conduct alleged are different. Although Melvin believes that because both he and his accuser "engaged in the same conduct" and that their circumstances were "sufficiently similar," *id.* at 7, the Court disagrees. For circumstances to be considered "sufficiently similar, two individuals *must have engaged in the same conduct* without such differentiating or mitigating circumstances that would distinguish their conduct or the [school's] treatment of them for it." *Doe*,

7

403 F. Supp. 3d at 516 (quoting *Sheppard v. Visitors of Virginia State Univ.*, No. 3:18-CV-723-HEH, 2019 WL 1869856 (E.D. Va. Apr. 25, 2019) (internal quotation marks omitted).

Here, Melvin's accuser alleged that Melvin frequently parked next to her and would wait for her there. Doc. No. 22-4 at 1. When she moved parking spots to avoid him, he followed, repeating the same behavior. *Id.* In addition, after practicing frisks, the accuser alleged that Mevin made what she perceived to be a sexual comment about searching her because he "forgot something." *Id.* Feeling uncomfortable, she filed a formal complaint with Sergeant Moore. *Id.* In contrast, Melvin alleges generally that unnamed cadets, male and female, made inappropriate sexual comments in his presence and that he was offended by them. Melvin does not allege that they were specifically directed toward him, and he only reported them to Sergeant Moore upon learning of the accusations made against him. *See* Doc. No. 25-3 at 3–4. Because of the timing, Sergeant Moore believed Melvin was defending himself, not making a formal complaint. *Id.* at 8–9.

While the conduct alleged by the parties share some similarities, Melvin's accuser reported concerns about his comments and actions toward her, while Melvin reported sexual comments, not specifically directed toward him, made by other male and female cadets generally. The differences in the allegations are not inconsequential. *See Doe,* 403 F. Supp. 3d at 515 (finding students not similarly situated where the plaintiff alleged that his female accuser sent sexually suggestive messages to a different male student (but neither the male student, nor anyone else, complained to school officials), and where the accuser alleged that the plaintiff had sexually harassed her despite being asked to stop); *See also Sheppard*, 993 F.3d at 237 (rejecting the plaintiff's use of the selective enforcement theory because even though there were generally shared facts surrounding the altercation, including the same broad time frame, the same students, and the same Code of

Conduct invoked, ultimately the two students were not similarly situated because they were charged with separate crimes).

Therefore, Melvin and the female cadet fall below the bar set in *Doe* and *Sheppard* because the complaints neither contain the same conduct, nor involve the same students. Accordingly, the variations in CPCC's treatment of them does not give rise to an inference of discrimination on the basis of sex. Moreover, because Melvin's complaints were generalized and made in response to learning of allegations against him, Sergeant Moore believed Melvin to be "airing out his grievances" and "telling [him] why he did it," rather than filing a formal complaint with the expectation of further investigation. Doc. No. 25-3 at 5, 9. These "differentiating [and] mitigating circumstances," combined with the differences in the conduct alleged and the students involved, reasonably distinguish the school's varied treatment of the two complaints. *Doe,* 403 F. Supp. 3d at 516. Thus, Melvin has not raised a triable issue that his gender was a but-for cause of his suspension and his Title IX claim fails. Accordingly, the Court will **GRANT** Defendant's Motion for Summary Judgment.[1]

## IV.   ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendant's Motion for Summary Judgment (Doc. No. 22) is **GRANTED**; and
2. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED.**

Signed: July 25, 2025

Kenneth D. Bell
United States District Judge

---

[1] To the extent that CPCC alleges Melvin's claims are time-barred under the relevant statute of limitations, the Court need not and does not reach that argument.